UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

BRIAN COSTIGAN, individually and on
behalf of a class of all others similarly
situated,

                Plaintiff,

                - against -

CITIMORTGAGE, INC.,

                Defendant.

------------------------------------------------------ X

**OPINION AND ORDER**

10 Civ. 8776 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/2/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

# I.     INTRODUCTION

        Brian Costigan brings this putative class action against CitiMortgage, Inc., ("Citi"), seeking declaratory relief, injunctive relief, damages, and attorneys' fees, alleging (1) breach of contract; (2)  promissory estoppel; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) constructive fraud; (6) negligence; (7) violation of the New York Deceptive Practices Act; (8) violation of the New Jersey Consumer Fraud Act; and (9) violation of the Fair Debt Collection Practices Act.  Defendant now moves to dismiss all claims pursuant to Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]  For the reasons

discussed herein, defendant's motion is granted.

## II.    BACKGROUND[2]

### A.    Home Affordable Mortgage Program

In response to the financial crisis, Congress in 2008 enacted the

Emergency Economic Stabilization Act of 2008, which in turn authorized the

Secretary of the Treasury to establish the Troubled Asset Relief Program

("TARP").[3]  TARP directed the Secretary of the Treasury to "implement a plan that

seeks to maximize assistance for homeowners" and allowed the Secretary to "use

loan guarantees and credit enhancements to facilitate loan modifications to prevent

avoidable foreclosures."[4]  Under this authority, the Department of the Treasury

announced the "Making Home Affordable Program" in February 2009, which

included the "Home Affordable Mortgage Program" ("HAMP").  HAMP was

aimed at helping homeowners who were in or were at immediate risk of being in

---

[1]      *See* Memorandum of Law in Support of Citimortgage Inc.'s Motion to Dismiss Amended Complaint ("Def. Mem.").

[2]      All alleged facts are drawn from the relevant portions of the complaint, and are taken to be true for the purposes of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1943 (2009).

[3]      Pub. L. No. 110-343, 122 Stat. 3765 (codified as amended at 12 U.S.C. §§ 5201-5261).

[4]      12 U.S.C. § 5219(a)(1).

default on their home loans by reducing monthly payments to sustainable levels.

Under HAMP, Citi entered into a Service Participation Agreement ("SPA") with Fannie Mae in July 2009, acting as an agent of the U.S. Department of the Treasury.[5]  The SPA states that it "shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors in interest."[6]  In entering into the SPA, Citi agreed to "perform the loan modification and other foreclosure prevention services"[7] for "all mortgage loans it services, whether it services such mortgage loans for its own account or for the account of another party."[8]

### B.    Loan Modification

To obtain a home loan modification under HAMP, the borrower applying for modification initially provides the lender with required

---

[5]     *See* Commitment to Purchase Financial Instrument and Service Participation Agreement for the Home Affordable Mortgage Program under the Emergency Economic Stabilization Act of 2009 ("SPA"), Ex. D to Notice of Motion at 11.  Although the SPA, the Trial Period Plan, and plaintiff's original mortgage documents were not attached to the Complaint, the Court may consider these documents because the Complaint "relies heavily on [their] terms and effects," rendering these documents "integral" to the Complaint.  *Chambers v Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[6]     SPA § 10.F.

[7]     *Id.* § 1.A.

[8]     *Id.* § 2.A.

documentation.  The lender reduces the monthly mortgage payment to thirty-one

percent of the homeowner's gross monthly income.  The homeowner participates

in a three-month Trial Period Plan ("TPP"), based on the new mortgage payment.

In executing the TPP agreement, which is labeled "Step One of a Two-Step

Documentation Process," the borrower represents that

> I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit[9] and as a result (i) I am either in default or believe that I will be in default under the Loan Documents in the near future, and (ii) I do not have the sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.[10]

If the borrower does not provide all the required documentation required by the

lender, or if the lender does not provide the borrower with an executed copy of a

modification agreement, "the Loan Documents will not be modified . . . and the

lender will have all of the rights and remedies provided in the Loan Documents,"

including instituting foreclosure proceedings.[11]  The lender "will not be obligated

or bound to make any modification of the Loan Documents if the lender

---

[9]    The Hardship Affidavit is used to verify the borrower's financial hardship in connection with an application for a loan modification.

[10]    Home Affordable Modification Trial Period Plan ("TPP"), Ex. C to Notice of Motion, § 1.A.

[11]    *Id.* § 2.F.

determines that [the borrower does] not qualify."[12]  Payments made under the TPP

do "not constitute a cure of [the borrower's] default under the Loan Documents

unless such payments are sufficient to completely cure [the borrower's] entire

default."[13]  Borrower agreed that "all terms and provisions of the Loan Documents

remain in full force and effect; nothing in [the TPP] shall be understood or

construed to be a satisfaction or release in whole or in part of the obligations

contained in the Loan Documents."[14]  Following successful completion of the TPP,

including final approval by the lender, the lender will permanently modify eligible

mortgages.

### C.    Costigan

In October 2005, Costigan received a loan from ABN Amro Mortgage

Group, Inc., secured by a mortgage on his home, which is located at 453 Boesel

Avenue, Manville, New Jersey.[15]  In April 2009, Costigan contacted Citi, the

servicer of the loan, seeking to obtain a loan modification.  At that time, Costigan

was suffering economic difficulties, but had never missed a mortgage payment.[16]

---

[12]    *Id.* § 2.G.

[13]    *Id.* § 2.E.

[14]    *Id.* § 4.D.

[15]    *See* Mortgage, Ex. A to Notice of Motion, at 1-2.

[16]    *See* Amended Complaint ("FAC") ¶ 172.

-5-

Costigan entered into a TPP with Citi effective November 1, 2009.[17] Under the TPP, Costigan was to make three monthly payments of $1,409.75 each, due on November 1, 2009, December 2, 2009, and January 1, 2010.[18] Costigan made all three payments on time.[19] Costigan also regularly contacted Citi, who assured him that "everything was progressing smoothly and that Mr. Costigan would obtain a permanent modification at the end of the trial period."[20]

When Costigan contacted Citi in January 2010, after submitting his third payment under the TPP, Citi told Costigan that his modification was still being reviewed and that he should make another trial payment.[21] Upon contacting Citi again in February 2010, Costigan was told that his HAMP modification application had been rejected in December 2009.[22] Citi also informed Costigan that "there was a large amount of unapplied funds in his account equaling [the TPP payments]."[23]

---

[17]     *See* TPP.

[18]     *See* FAC ¶ 175.

[19]     *See id.* ¶ 177.

[20]     *See id.*

[21]     *See id.* ¶ 178.

[22]     *See id.* ¶ 180.

[23]     *Id.* ¶ 181.

Citi subsequently informed Costigan that he should apply for Citi's internal loan modification program, and that Costigan should resume making full payments in accordance with the terms of the original loan documents. By March 2010, Costigan resumed making full payments.[24] Costigan also applied for Citi's internal loan modification program. Although Costigan contacted Citi regularly to inquire about the status of the application, Citi did not respond to his request for information.[25]

Ultimately, Costigan was unable to afford his full monthly payments and filed for Chapter 7 bankruptcy. On August 4, 2010, after discharge of the bankruptcy, Citi filed a foreclosure complaint against Costigan.[26]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" promulgated by the Supreme Court in *Ashcroft v. Iqbal*.[27] *First*, a court "'can choose to begin by identifying pleadings that, because they are

---

[24]    *See id.* ¶ 182.

[25]    *See id.* ¶ 183.

[26]    *See id.* ¶ 184.

[27]    129 S.Ct. at 1950.

-7-

no more than conclusions, are not entitled to the assumption of truth.'"[28]

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to withstand a motion to dismiss.[29]  *Second*,

"[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for

relief."[30]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the

complaint must meet a standard of "plausibility."[31]  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[32]

Plausibility "is not akin to a probability requirement;" rather, plausibility requires

"more than a sheer possibility that a defendant has acted unlawfully."[33]

### B.    Federal Rule of Civil Procedure 9(b)

---

[28]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[29]     *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[30]     *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[31]     *Twombly*, 550 U.S. at 564.

[32]     *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[33]     *Id.* (quotation marks omitted).

Rule 9(b) provides that "the circumstances constituting fraud . . . shall be stated with particularity."  To satisfy the particularity requirement, "the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[34]  "While traditionally associated with claims of securities fraud, Rule 9(b) has been applied to claims of consumer fraud as well as claims relating to consumer protection statutes."[35]

Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally,"[36] this rule should not be "mistaken for license to base claims of fraud on speculation and conclusory allegations."[37]

> [P]laintiffs must plead facts that give rise to a strong inference of intent. The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.[38]

---

[34]     *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quotation marks omitted).

[35]     *Meserole v. Sony Corp. of America*, No. 08 Civ. 8987, 2009 WL 1403933, at *3 (S.D.N.Y. May 19, 2009).

[36]     Fed. R. Civ. P. 9(b).

[37]     *Shields v. Cititrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

[38]     *Lerner*, 459 F.3d at 290-91 (quotation marks and citations omitted).

## C.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that other than amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or with the court's leave."[39]  Although "[t]he Court should freely give leave when justice so requires,"[40] it is "within the sound discretion of the district court to grant or deny leave to amend."[41]  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[42]  However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile."[43]

## IV.   APPLICABLE LAW[44]

### A.    Breach of Contract

To survive a motion to dismiss a breach of contract claim, the

---

[39]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[40]    Fed. R. Civ. P. 15(a)(2).

[41]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[42]    *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[43]    *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

[44]    With the exception of plaintiff's claim under the New York Deceptive Practices Act, New Jersey law applies to all of the claims at issue in this motion.

complaint must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom, and (4) that the party stating the claim performed its own contractual obligation."[45]  "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."[46]

### B.    Promissory Estoppel

A claim for "[p]romissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."[47]

### C.    Breach of Covenant of Good Faith and Fair Dealing

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract."[48]  New Jersey has adopted the Uniform Commercial Code definition of "good faith," defining it

---

[45]    *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).

[46]    Restatement (Second) of Contracts § 313(2) cmt. a (1981).

[47]    *Toll Bros. v. Brotherhood of Chosen Freeholders of Burlington*, 194 N.J. 223, 253 (2008).

[48]    *Elliott & Franz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 328 (3d Cir. 2007) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005)).

as "honesty in fact and the observance of reasonable commercial standards of fair

dealing in the trade."[49]  The covenant of good faith and fair dealing therefore

"'requires that neither party do anything which will interfere with or destroy each

party's reasonable expectations under the contract.'"[50]

### D.   Fraud

"To establish common-law fraud, a plaintiff must prove: (1) a material

misrepresentation of a presently existing or past fact; (2) knowledge or belief by

the defendant of its falsity; (3) an intention that the other person rely on it; (4)

reasonable reliance thereon by the other person; and (5) resulting damages."[51]

"Under New Jersey law, a tort remedy does not arise from a contractual

relationship unless the breaching party owes an independent duty imposed by

law."[52]

"[S]tatements will not form the basis of a fraud claim when they are

---

[49]     N.J. Stat. Ann. § 12A:2-103(1)(b) (West 2004).  *See also* U.C.C. § 2-103(1)(c) (2005).

[50]     *Lekki Capital Corp. v. Automatic Data Processing, Inc.*, No. 01 Civ. 7421, 2002 WL 987147, at *4 (S.D.N.Y. May 14, 2002) (quoting *Atlantic City Racing Assoc. v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 510 (D.N.J. 2000)).

[51]     *Banco Popular North Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quotation marks omitted).

[52]     *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 280 (2002).

mere 'puffery' or are opinions as to future events."[53]   Although an opinion can

constitute a misrepresentation, there is "a marked difference between what

constitutes justifiable reliance upon statements of the maker's opinion and what

constitutes justifiable reliance upon other representations."[54]

### E.   Negligent Misrepresentation

"To establish a claim of negligent misrepresentation, a plaintiff must

prove that an incorrect statement was negligently made and justifiably relied upon

to recover damages for economic loss or injury sustained as a consequence of that

reliance."[55]   "[N]egligence might be inferred from the falsity of the

representation."[56]   "Because negligent misrepresentation does not require scienter

as an element, it is easier to prove than fraud."[57]

### F.   Negligent Processing of Loan Modifications and Foreclosures

A common law cause of action for negligence has four elements: "(1)

a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual

---

[53]    *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (applying New York law).

[54]    Restatement (Second) of Torts § 525 cmt. d.

[55]    *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-cv-5774, 2009 WL 2043604, at *32 (D.N.J. July 10, 2009) (citing *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983)).

[56]    *Rosenblum*, 93 N.J. at 334.

[57]    *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 110 (2000).

damages."[58]

## G.      Violation of the New York Deceptive Practices Act

The New York Deceptive Practices Act (the "DPA")[59] makes "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service in this state" unlawful.[60]  The DPA allows "any person who has been injured by reason of any violation of [the DPA]" to bring an action for damages.  Under the statute, "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated [the DPA]."[61]  The court may also "award reasonable attorney's fees to a prevailing plaintiff."[62]

To state a cause of action under the DPA a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."[63]  A

---

[58]     *Polzo v. County of Essex*, 196 N.J. 569, 584 (2008).

[59]     N.Y. Gen. Bus. Law § 349 (McKinney 2004).

[60]     *Id.* § 349(a).

[61]     *Id.* § 349(h).

[62]     *Id.*

[63]     *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

-14-

violation of the DPA does not require proof of the elements of common-law fraud and thus "an action under [section] 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)."[64]

### H.   Violation of the New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act (the "CFA") outlaws

> The act, use or employment . . . of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .[65]

"To state a claim under the [CFA], a plaintiff must allege (1) a violation of the Act, (2) that he or she suffered an ascertainable loss as a result of the unlawful conduct, and (3) a causal relationship between the unlawful practice and the loss sustained by plaintiff."[66]  New Jersey courts have repeatedly held that a "mortgage loan [is] covered by the CFA's definitions of merchandise and advertisement . . . and that [a] claim that the lender had engaged in an unconscionable commercial practice in

---

[64]   *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

[65]   N.J. Stat. Ann. §§ 56:8-1 to -109 (West 2004).

[66]   *Meadowlands Invs., LLC v. CIBC World Mkts Corp.*, No. 04 Civ. 7328, 2005 WL 2347856, at *6 (S.D.N.Y. Sept. 22, 2005).

-15-

violation of N.J.S.A. 56:8-2 was for a jury to decide."[67]  "Claims under the CFA

are required to meet the particularity requirement of [Rule] 9(b)."[68]

## I.      Violation of the Fair Debt Collection Practices Act

Congress passed the Fair Debt Collection Practices Act (the

"FDCPA")[69] to "eliminate abusive debt collection practices by debt collectors

. . . ."[70]  The FDCPA prohibits the "use of any false representation or deceptive

means to collect or attempt to collect any debt . . . ,"[71] and of any "unfair or

unconscionable means to collect or attempt to collect any debt."[72]  A debt collector,

under the definition of the statute, is a person who collects or attempts to collect

"debts owed or due or asserted to be owed or due another."[73]  The FDCPA,

however, provides a number of exceptions to this definition.  One such exception is

---

[67]      *Gonzales v. Wilshire Credit Corp.*, 988 A.2d 567, 573 (N.J. Super. Ct. App. Div. 2010) (citing *Associates Home Equity Servs. v. Troup*, 778 A.2d 529 (N.J. Super. Ct. App. Div. 2001)).

[68]      *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010).  *Accord Meadowlands*, 2005 WL 2347856, at *3.

[69]      15 U.S.C. §§ 1692-1692p (2009).

[70]      *Id.* § 1692(e).

[71]      *Id.* § 1692e(10).

[72]      *Id.* § 1692f.

[73]      *Id.* § 1692a(6).

"any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity. . . (iii) concerns a debt which was not in default at the time it was obtained by such person."[74]  "Thus, under [section] 1692a(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used."[75]

## V.    DISCUSSION

### A.    Breach of Contract

#### 1.    Mortgage Agreement

Costigan alleges that Citi breached the terms of the residential mortgage agreement by "foreclosing on loans that were not in default."[76]  This claim has no merit.  The mortgage agreement states that if Costigan were to default, Citi could, after giving notice, "foreclose [the Mortgage] by judicial proceeding."[77]  Costigan does not allege that Citi failed to give notice before instituting foreclosure proceedings.  Costigan admits that he could not pay his full mortgage payments after his application for modification had been denied, and that

---

[74]    *Id.* § 1692a(6)(F).  *See also Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 611-12 (S.D.N.Y. 2009).

[75]    *Alibrandi v. Financial Outsourcing Servs.*, 333 F.3d 82, 86 (3d Cir. 2003).

[76]    Compl. ¶ 239.

[77]    Mortgage, Ex. A to Compl. ¶ 22.

he declared bankruptcy.  Costigan therefore breached the mortgage agreement, and Citi, by initiating foreclosure proceedings, merely exercised its rights under the mortgage agreement.  Costigan's claim for breach of the original mortgage agreement is therefore dismissed.

### 2.      Service Provider Agreement

Costigan cannot enforce the provisions of the SPA between Citi and Fannie Mae.  Several district courts have held that borrowers have no third-party right to enforce the SPA.[78]  Contrary to Costigan's assertion that "the SPA and the incorporated Program Documentation constitute a contract for which [p]laintiffs and the Class are intended beneficiaries,"[79] the SPA specifically states that it "shall inure to the benefit of and be binding upon the parties to the Agreement,"[80] Citi and Fannie Mae.  Allowing Costigan to enforce the SPA would contradict the express terms of the agreement and would "open the door to potentially 3-4 million homeowners filing individual claims."[81]  Costigan's claim for breach of the SPA is

---

[78]      *Edwards v. Aurora Loan Servs., LLC*, --- F. Supp. 2d ----, No. 09 Civ. 2100, 2011 WL 2340939, at *4-*6 (D.D.C. June 14, 2011).  *Accord Grill v. BAC Home Loans Servicing*, No. 10-CV-03057, 2011 WL 127891, at *5-*7 (E.D. Cal. Jan. 14, 2011) (collecting cases).

[79]      FAC ¶ 241.

[80]      SPA § 10.F.

[81]      *Marks v. Bank of Am., N.A.*, No. 10-cv-08039, 2010 WL 2572988, at *4 (D. Ariz. June 22, 2010).

therefore dismissed.

### 3.    Trial Period Plan

Costigan argues that the TPP agreement constitutes a valid contract for the permanent modification of his home loan, and that Citi breached this contract by not offering him a permanent loan modification.  As discussed by this Court in *DeCaro v. JPMorgan Chase*, Costigan's claim "is contradicted by the express terms of the TPP agreement, which states that any permanent modification is subject to the subsequent approval of Chase, and the receipt of a signed modification agreement."[82]

Although the TPP states that Citi "will provide [the borrower] with a Home Affordable Modification Agreement"[83] if the borrower is in compliance with the TPP, it also unequivocally states that the TPP does not constitute a permanent modification of the original loan; by signing the TPP, Costigan attested that he

> understand[s] that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) [he] meets all of the conditions required for modification, (ii) [he] receive[s] a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.[84]

---

[82]    *DeCaro v. JPMorgan Chase*, No. 10 Civ. 8993, 2011 WL ----, at *26 (S.D.N.Y. July 27, 2011).

[83]    TPP, preamble.

[84]    *Id.* § 2.G.

The TPP ponders that "[i]f prior to the Modification Effective Date . . . the Lender does not provide [the borrower] with a fully executed copy of . . . the Modification Agreement . . . the Loan documents will not be modified . . . ."[85]  By signing the TPP, Costigan "agree[d] that [Citi] will not be obligated or bound to make any modification of the Loan Documents if [Citi] determines that [Costigan does] not qualify."[86]  The Complaint fails to plead that Costigan met "all of the conditions required for modification" and Citi clearly never received a "fully executed copy of the Modification Agreement."

Several courts have already held that the TPP does not constitute a binding contract for permanent modification.[87]  The cases Costigan cites in opposition are not only limited to one district, but are easily distinguishable.  In *Bosque v. Wells Fargo*, plaintiffs' theory was "that the TPP is a contract governing the three-month trial period, and that compliance with its obligations entitles plaintiffs to either (1) a new contract with a permanent loan modification or (2) a decision on whether plaintiffs are entitled to the permanent modification by the

---

[85]     *Id.* § 2.F.

[86]     *Id.*

[87]     *See, e.g.*, *Lund v. CitiMortgage, Inc.*, No. 10-CV-1167, 2011 WL 1873690, at *2 (D. Utah May 17, 2011); *Grill*, 2011 WL 127891, at *4; *Brown v. Bank of New York Mellon*, No. 10-CV-550, 2011 WL 206124, at *3 (W.D. Mich. Jan. 21, 2011); *Vida v. OneWest Bank*, No. 10-987, 2010 WL 5148473, at *15 (D. Or. Dec. 13, 2010).

modification effective date stated in the TPP."[88]  The *Bosque* court held that "modified mortgage payments standing alone would likely not constitute cognizable consideration under the TPP."[89]  However, the *Bosque* court held that because plaintiffs "were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to undergo credit counseling if requested to do so" they had suffered a "new legal detriment," and that plaintiffs therefore had sufficiently alleged consideration.[90] Costigan does not allege that any such matters constituted consideration.

Under the TPP agreement Citi would "suspend any scheduled foreclosure sale" while Costigan was making TPP payments.[91]  But Costigan does not allege that Citi foreclosed on his home while the TPP was in effect, nor that Citi did so before it notified him that his application for permanent modification had been denied.  Thus Citi fulfilled all of its obligations under the TPP. Accordingly, Costigan's claim for breach of the TPP agreement is dismissed.

## B.    Promissory Estoppel

In the alternative, Costigan seeks to recover damages based on

---

[88]    762 F. Supp. 2d 342, 352 (D. Mass. 2011).

[89]    *Id.*

[90]    *Id.*

[91]    TPP § 2.B.

promissory estoppel, alleging that he "forewent other remedies" such as

bankruptcy or selling his home, because Citi "by way of the TPP agreement, made

a representation to [Costigan] and Class Members . . . that if they returned the TPP

agreements executed and with supporting documentation, and made their TPP

payments, they would receive a permanent HAMP modification."[92]  As discussed

earlier, the TPP agreement unequivocally states that it does not constitute a

permanent modification of Costigan's loan.[93]  Accordingly, Costigan's promissory

estoppel claim is dismissed.

### C.    Breach of Covenant of Good Faith and Fair Dealing

Costigan claims that Citi, by entering into the SPA and receiving

funds under TARP from the Department of the Treasury, "covenanted, on behalf of

itself and its subsidiaries to administer its contractual obligations with principles of

good faith and fair dealing."[94]  Costigan further claims that Citi therefore has an

"implied duty to insure that its loan modification and foreclosure procedures were

---

[92]     FAC ¶ 218.

[93]     None of the cases relied on by Costigan discusses the relevant
language quoted from the TPP in part V.A.3, *supra*.  *See,* e.g., *Jackson v. Ocwen
Loan Servicing, LLC*, No. 10–cv–00711, 2011 WL 587587, at *3 (E.D. Cal. Feb. 9,
2011); *Bosque*, 762 F. Supp. 2d at 351-53; *Durmic v. J.P. Morgan Chase Bank,
NA*, No. 10-CV-10380, 2010 WL 4825632, at *5 (D. Mass. Nov. 24, 2010);
*Hanson v. Wells Fargo Home Mortg.*, No. 10CV00318, 2010 WL 3310615, at *2-3
(E.D. Ark. Aug. 18, 2010).

[94]     FAC ¶ 226.

not fraudulent or unconscionable with respect to borrowers."[95]  Costigan claims

that these covenants were breached by defendants in several ways.[96]

As discussed above, Costigan was neither a party to the SPA nor an

intended third-party beneficiary of that agreement.  As such, he cannot enforce any

covenant of that agreement, explicit or implied.  The only agreement to which

Costigan was a party is the original loan and mortgage.  But Costigan's allegations

of breach of the covenant of good faith and fair dealing concerns Citi's obligations

under the SPA, *not under the original loan documents*.

The only alleged breach of the covenant of good faith and fair dealing

that concerns the *original* loan documents are that Citi failed to take reasonable

measures to collect the proper sums from Costigan and initiated foreclosure

proceedings without cause.  But the sums Citi collected or attempted to collect

from Costigan were either due under his original mortgage or lower sums paid in

accordance with the TPP agreements.  Further, as discussed earlier, Costigan

breached the express terms of the original loan documents by failing to pay his

mortgage, and defendants therefore had reason to initiate foreclosure proceedings.

Accordingly, Costigan's claim for breach of the covenant of good faith and fair

dealing is dismissed.

---

[95]    *Id.* ¶ 225.

[96]    *See id.* ¶ 229

### D.    Fraud and Negligent Misrepresentation

Costigan asserts a claim for fraud and for negligent misrepresentation, alleging that defendant knowingly, recklessly, or negligently "misrepresented and/or failed to disclose material facts relating to Citi's loan modification and foreclosure processes,"[97] and that he as a result "suffered damages and economic loss in an amount to be proven at trial."[98]  Specifically, Costigan alleges that Citi misrepresented that

> (1) Citi had properly processed modification documents; (2) Citi would make prompt decisions on modifications, although the bank kept many consumers waiting months longer than promised; (3) Citi would not foreclose upon consumers' homes while modification requests were pending or while homeowners were making trial modification payments; (4) Citi had approved a loan modification, when it had not; and/or that (5) Citi would convert consumers to permanent modifications if and when they made the payments required by trial modification agreements, although many consumers who successfully completed their trial periods have not received permanent modifications.[99]

Costigan's allegations fail to satisfy the strict pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure.[100]  The Amended Complaint

---

[97]    *Id.* ¶¶ 234, 244.

[98]    *Id.* ¶¶ 241.

[99]    *Id.* ¶ 234.

[100]    Rule 9(b) applies to both fraud claims and negligent misrepresentation. *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at 32* (D.N.J. July 10, 2009).

alleges only that Citi represented to Costigan that "everything was processing smoothly and that Mr. Costigan would obtain a permanent modification at the end of the period."[101]  Costigan therefore fails to "identify the speaker, [ ] state where and when the statements were made, [or] explain why the statements were fraudulent."[102]  Accordingly, Costigan's fraud and negligent misrepresentation claims are dismissed.

### E.   Negligent Processing of Loan Modifications and Foreclosures

Costigan claims that Citi owes its borrowers "a duty of reasonable care in the processing and determination of the loan modification applications and the processing of their foreclosures"[103] and that Citi breached this duty by "failing to properly evaluate [p]laintiff and Class Members' loan modification applications and foreclosures."[104]  *First*, as discussed above, the SPA and the other terms of HAMP do not impose a duty on Citi with respect to borrowers.  *Second*, it is well-established that "a bank does not owe a duty of care to a borrower, even if the borrower is a consumer."[105]  Costigan's negligence claim is therefore dismissed.

---

[101]   FAC ¶ 177.

[102]   *Lerner*, 459 F.3d at 290.

[103]   *Id.* ¶ 249.

[104]   *Id.* ¶ 250.

[105]   *Shinn v. Champion Mortgage Co.*, No. 09-cv-00013, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (citing *United Jersey Bank v. Kensey*, 306

**F.      Violation of the New York Deceptive Practices Act**

Costigan's claims that Citi violated section 349 of New York's General Business Law must be dismissed because the Complaint fails to allege that any consumer-oriented conduct took place in New York.  Section 349(a) outlaws "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service *in this state*."[106]  Costigan is a resident of New Jersey, and his loan and mortgage were obtained through branches located in New Jersey. Costigan in fact does not allege that Citi committed any acts that caused injury to him in New York.

To the extent that Costigan alleges that he was injured in New Jersey by allegedly deceptive practices devised or originating in New York, his claim under section 349 also fails.  "The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer."[107]  The statute "was not intended to

---

N.J.Super. 540, 553 (N.J. Super. Ct. App. Div. 1997)).

[106]      N.Y. Gen. Bus. Law § 349(a) (emphasis added).

[107]      *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002) (dismissing Florida plaintiff from an action against New York insurer where policy was purchased and paid for in Florida).  *Accord Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 120 (S.D.N.Y. 2002) (dimissing claim because "[w]hile it appears that plaintiff's application for the insurance policies was submitted in New York, she is a New Jersey resident and received her benefits in New Jersey").

-26-

police the out-of-state transactions of New York companies."[108]  Instead, the

legislative history of the statute makes clear that it was intended to protect

consumers in the state of New York.[109]  To expand this protection to consumers in

other states would subject New York businesses to almost unlimited liability.  Not

only is this a burden on the courts, but would undermine other states' initiatives to

protect their consumers in a way they think most appropriate.  Costigan's claim for

violation of the DPA is therefore dismissed.

### G.    Violation of the New Jersey Consumer Fraud Act

Plaintiff alleges that "the acts and practices of Defendant" as set forth

elsewhere in the Amended Complaint, violate the CFA.[110]  As discussed earlier,

---

[108]    *Goshen*, 98 N.Y.2d at 325.

[109]    *See id.* (discussing legislative history and underlying public policy
rationale of section 349).

[110]    FAC ¶¶ 258-259.  Defendant seeks to dismiss this claim on the ground
that "where, as here 'the factual allegations of the cause of action are . . . scattered
throughout the complaint . . .' dismissal for failure to satisfy Rule 8(a)(2) is
proper."  Def. Mem. at 22 (quoting *San Diego Home Solutions v. Reconstruct Co.*,
No. 08 cv 1970, 2008 WL 5209972, at *2 (S.D. Cal. Dec. 10, 2008)).  "A statement
in a pleading may be adopted by reference elsewhere in the same pleading or in
any other pleading or motion."  Fed. R. Civ. P. 10(c).  This rule is not made void
by the *Twombly-Iqbal* "plausibility" requirement, nor by Rule 9(b)'s particularity
requirement.  A complaint does not need to restate the same facts outlined in the
section for common-law fraud for each subsequent claim, and the court will not
dismiss Costigan's claim simply because he incorporates by reference facts stated
elsewhere in the Amended Complaint.  The particularity requirement of Rule 9(b)
has three purposes: (1) to put the defendant on notice of the details of the claims
against him, (2) to protect a defendant's reputation and goodwill from unfounded

Costigan's allegations regarding Citi's purportedly fraudulent or deceptive conduct fails to satisfy the strict pleading requirement of Rules 9(b) of the Federal Rules of Civil Procedure.[111]  Costigan simply fails to "plead the who, what, when, where, and how: the first paragraph of any newspaper story."[112]  Accordingly, Costigan's claim under the CFA is dismissed.

### H.      Violation of the Federal Debt Collection Practices Act

Costigan alleges that Citi violated the FDCPA by engaging "in a pattern and practice of filing false, deceptive, misleading, and perjured affidavits in connection with foreclosure proceedings."[113]  But the FDCPA does not extend to the facts of this case.  A "debt collector" under means anyone who collects "debts owed . . . another" and excludes collecting a debt to the extent the collection "concerns a debt which *was not in default* at the time it was obtained by such person."[114]  The Amended Complaint does not allege that Costigan's loan was in

---

allegations, and (3) to prevent strike suits.  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  The Amended Complaint states facts with sufficient particularity to accomplish these goals.

[111]    *See Daloisio*, 754 F. Supp. 2d at 709 (holding that "[c]laims under the CFA are required to meet the particularity requirement of [Rule] 9(b)").

[112]    *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)

[113]    FAC ¶ 305.

[114]    15 U.S.C. § 1692a(F) (emphasis added).

default at the time Citi "obtained" that loan.[115]   As a result, Citi is excluded from the definition of "debt collector" under the statute.   Costigan's claim under the FDCPA is therefore dismissed.

### I.      Leave to Replead

Leave to replead is generally granted unless it would be futile to permit plaintiff to amend.   Here, Costigan may, with regard to his fraud, negligent misrepresentation, and CFA claims, be able to allege additional facts that would satisfy the particularity requirement of Rule 9(b).   Likewise, Costigan could allege additional facts that would allow him to state a claim for breach of the original loan agreements.

However, repleading the other claims would be futile.   Costigan has no standing to enforce the SPA, rendering futile any attempt to replead their claims for breach of the SPA or for breach of the covenant of good faith and fair dealing. Given that the TPPs did not grant Costigan a permanent modification, repleading his claim for breach of the TPP and for promissory estoppel likewise would be futile.   New Jersey law holds that Citi does not owe a duty of care to borrowers beyond the terms of their contract, defeating any negligence claim.   And because Costigan is a New Jersey resident who conducted all of his transactions with Citi in New Jersey repleading the DPA claim would also be futile.   Additionally, Citi is

---

[115]      *Id.* § 1692a(F)(iii).

-29-

explicitly excluded from the statutory language of the FDCPA.  Accordingly, these claims are dismissed with prejudice.  Costigan may within thirty (30) days of the date of this Order file a second amended complaint with respect to his claims for (i) breach of the original mortgage agreements, (ii) fraud, (iii) negligent misrepresentation, and (iv) violation of the CFA.  If Costigan fails to do so, all claims dismissed herein will be dismissed with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, Citi's motion to dismiss is granted without prejudice as to Costigan's claims for (i) breach of contract of the original mortgage agreements, (ii) fraud, (iii) negligent misrepresentation, and (iv) violation of the CFA.  Citi's motion to dismiss is granted with prejudice as to Costigan's claims for (i) breach of the SPA and the TPP agreements, (ii) promissory estoppel, (iii) breach of the covenant of good faith and fair dealing, (iv) negligence, (v) violation of the DPA, and (vi) violation of the FDCPA.  The Clerk of the Court is directed to close this motion [docket #25] and, if Costigan does not file an amended complaint within thirty (30) days, to close this case.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             August 1, 2011

**- Appearances -**

**For Plaintiff:**

Preetpal Grewal, Esq.
Brendan S. Thompson, Esq.
Charles Joseph LaDuca, Esq.
Matthew L. Wiener, Esq.
Cuneo Gilbert & LaDuca, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960

Alexandra Coler Warren, Esq.
Cuneo Gilbert & LaDuca, LLP
106-A South Columbus Street
Alexandria, VA 22314
(202) 789-3960

Charles E. Schaffer, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Phila, PA 19106-3697
(877) 882-1011

David Ian Greenberger, Esq.
Matthew James McDonald, Esq.
Liddle & Robinson, LLP
800 Third Avenue, 8th Floor
New York, NY 10022
(212) 687-8500

Gerald W. Crawford, Esq.
Nicholas J. Mauro, Esq.
Crawford Quilty & Mauro Law Firm
1701 Ruan Center
Des Moines, IA 50309
(515) 245-5420

Jonathan Minkove, Esq.
Friscia & Associates, LLC
17 Academy Street, Penthouse
Newark, NJ 07102
(973)500-8024

Robert K. Shelquist, Esq.
Lockridge, Grindal, Nauen, P.L.L.P.
100 Washington Avenue S.
Minneapolis, MN 55401
(612) 339-6900

**For Defendant:**

Matthew D. Ingber, Esq.
Mauricio Alejandro Espana, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

Lucia Nale, Esq.
Debra Bogo-Ernst, Esq.
Michele Odorizzi, Esq.
Stephen Kane, Esq.
Mayer Brown LLP (Chicago)
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600